

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0474-14

---

### LAWRENCE DONOVAN, Appellant

### v.

### THE STATE OF TEXAS

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

---

**JOHNSON, J., delivered the opinion of the unanimous court.**

### O P I N I O N

Appellant Lawrence Donovan plead *nolo contendere* to a charge of injury to a child[1] and was placed on deferred-adjudication community supervision in 2006.[2] In 2008, a modification of appellant's conditions of community supervision required him to attend a sex-offender-treatment program and meet a number of treatment goals over a period of time. In a subsequent proceeding,

---

[1] Tex. Penal Code § 22.04(a).

[2] Tex. Code Crim. Proc. Art. 42.12 § 5.

the trial court found that appellant had violated the terms of his deferred adjudication by failing to attend the sex-offender-treatment program and to meet its goals, adjudicated him guilty of injury to a child, and sentenced him to four years' imprisonment. The court of appeals affirmed, and appellant petitioned this Court for discretionary review. We affirm.

## Background

In 2004, appellant was charged with aggravated sexual assault and indecency with a child. On August 23, 2006, the indictment was amended to add a charge of injury to a child. Appellant entered a plea of *nolo contendere* to the added charge, and the trial court placed him on five years' deferred-adjudication community supervision ("probation" in appellant's petition and older sources). The trial court found appellant not guilty of the originally alleged offenses of aggravated sexual assault and indecency with a child and, with the agreement of the state, granted an expunction of the two offenses on which appellant had been acquitted. The state did not appeal the order granting the expunctions.

Appellant's community supervision was modified a number of times after it was originally imposed on August 23, 2006. The first modification came two days later, on August 25. The trial court modified a condition that appellant "not use, possess, or consume" any alcoholic beverage to one of "no excessive consumption." Following the election of a new judge to the trial court, appellant's community supervision was modified on March 24, 2008. The "no excessive consumption" condition was changed back to "do not use, possess, or consume," and the trial court extended appellant's community supervision for an additional year. The trial court also imposed sex-offender conditions on appellant, including the following condition:

3. Submit to sex offender treatment evaluation as directed by the supervision officer.

Attend and participate fully in and successfully complete psychological counseling, treatment, and aftercare sessions for sex offenders with an individual or organization as specified by or approved by the Court or the supervision officer. Pay all costs of evaluation, counseling, treatment and aftercare. Treatment must be completed within three years of its initiation, with at least one-third of treatment completed each year.[3]

Initially, appellant began sex-offender treatment with provider PSY. However, due to conflicting schedules, appellant switched to Strain and Associates, which offered weekend sessions that could accommodate appellant's schedule. Appellant diligently attended and participated in the program until November of 2008. An issue arose during group sessions when appellant was required to discuss the expunged sex offenses. Based upon the acquittals and expunction, appellant refused, and the treatment provider dismissed appellant until he either admitted to the offenses or passed a polygraph examination. Appellant was able to return to the program a few weeks later after his community-supervision officer was able to work out an agreement with Strain. In February of 2009, appellant's attorneys filed a motion for modification of the conditions of community supervision based upon the offense-discussion issue. In March, his attorneys and the trial court had an *ex parte* conference in chambers to discuss the problem. In August, a second conference was held in chambers among appellant's attorneys, the state's attorney, the trial court, appellant's community supervision officer Mayra Pinedo, and Strain. The trial court determined that appellant would not be required to admit 100% of the offense, which was one of the goals required by the treatment program. However, the court determined that appellant would still be required to discuss the facts of the offense.

Appellant's treatment then continued until the issue reared its head again on February 1,

---

[3] On November 17, 2008, the trial court added sixteen days of weekend jail confinement. Two weeks later on December 1, appellant's work-release days were modified to accommodate the holiday season.

2010, during a session between appellant and a victim therapist. The victim therapist wanted appellant to discuss the expunged offenses, but appellant believed that he could discuss only the offense for which he was on community supervision for: injury to a child. On February 3, appellant met with Strain with documents prepared by his attorneys regarding the expunction. Strain, concerned about legal liability for discussing the expunged offenses, stopped appellant's treatment until they could get clarification. Appellant talked to his attorneys about asking for clarification from the court, and appellant called Pinedo the next day. Less than a week later, on February 8, appellant's attorneys met with the trial court, which wanted to hear from community supervision before ruling. On February 24, Strain sent a letter to Pinedo asking for clarification. In this letter, Strain concluded that, if appellant could not discuss the expunged offenses, then there might not be any useful work that could be done in Strain's sex-offender-treatment program. Pinedo took Strain's letter to a court officer,[4] and that officer returned with a response: appellant would still be held accountable for attending sex-offender treatment and meeting the treatment goals.

During appellant's weekly meetings with Pinedo over the course of the next several months, Pinedo reiterated to appellant that he would be held accountable. Pinedo also told appellant that he could go to a different provider. However, appellant declined to do so, saying that the problem of what offenses could be discussed–injury to a child versus the expunged offenses–would necessarily rise again.

On October 20, 2010, the state moved to proceed to adjudication based upon appellant's failure to attend sex-offender treatment and his failure to meet two-thirds of the goals of a sex-

---

[4] It is unclear what type of officer (bailiff, clerk, reporter, etc.) Pinedo took Strain's letter to. In her testimony, Pinedo simply referred to "the court officer" and identified him as Mr. Thompson. Presumably, Mr. Thompson is known to the parties because his role was not explored further.

offender-treatment program. A hearing was held on January 7, 2011, and the trial court found that appellant had violated the terms of his community supervision, found him guilty of injury to a child, and sentenced him to four years' imprisonment.

The court of appeals affirmed the trial court's judgment, finding that appellant had forfeited any claim to error about the sex-offender-treatment condition.[5]

Appellant petitioned this Court for review, and we granted review on two grounds:

(1)     Did the Court of Appeals erroneously affirm the trial court's order revoking Petitioner's probation when the trial court ignored a final expunction order entered by the former judge of the court? Can an expunction order that is final be ignored by a court, C.S.C.D. officer,[6] or treatment provider?

(2)     Did the Court of Appeals erroneously affirm the trial court's order revoking Petitioner's probation when the probation was revoked because Petitioner failed to attend and meet the requisite number of goals of a sex offender treatment program for an offense that had been expunged and for which he had been found "not guilty?"

**Preservation of Error**

Before addressing appellant's grounds for review, we address whether appellant preserved error. Based upon *Speth v. State*,[7] the court of appeals found that appellant did not preserve error, and it declined to address the merits of his claim. In *Speth*, we explained the need to object to the imposition of conditions of community supervision before the trial court to preserve error for appeal.

---

[5]  *Donovan v. State*, No. 02-11-00033-CR, 2014 Tex. App. LEXIS 2852; 2014 WL 975728 (Tex. App.–Fort Worth Mar. 13, 2014) (en banc). In a concurring and dissenting opinion, Justice Walker would have held that appellant preserved error, not to the modification adding the sex-offender-treatment condition that appellant had failed to object to, but to the requirement by Strain's sex-offender-treatment program that appellant admit and discuss the offenses that were expunged. *Id.* at 2014 Tex. App. LEXIS 2852 at *32; 2014 WL 975728 at *17. Justice Dauphinot, in her dissent, addressed the merits of appellant's revocation and would have found an abuse of discretion by the trial court not only in the revocation, but in the community supervision modifications themselves. *Id.* at 2014 Tex. App. LEXIS 2852 at **52-55; 2014 WL 975728 at **13-14.

[6]  "C.S.C.D." stands for Community Supervision and Corrections Department.

[7]  *Speth v. State*, 6 S.W.3d 530 (Tex. Crim. App. 1999).

> [C]onditions not objected to are affirmatively accepted as terms of the contract. Thus, by entering into the contractual relationship without objection, a defendant affirmatively waives any rights encroached upon by the terms of the contract. A defendant who benefits from the contractual privilege of probation, the granting of which does not involve a systemic right or prohibition, must complain at trial to conditions he finds objectionable. A trial objection allows the trial court the opportunity to either risk abusing his discretion by imposing the condition over objection or reconsider the desirability of the contract without the objectionable condition.

*Speth*, 6 S.W.3d at 534-35.

Based upon the record, appellant did not object to the original imposition of community supervision or to any of the trial court's modifications. Instead, appellant accepted and participated in sex-offender treatment. Thus, the court of appeals correctly determined that, therefore, appellant was estopped from objecting to the imposition of the sex-offender-treatment condition on appeal, thus it did not reach the merits of appellant's appeal.

However, appellant's grounds for appeal to the court of appeals were not based on the original imposition of the sex-offender-treatment condition. Appellant's initial brief to the court of appeals challenged the revocation of his community supervision.[8] His three grounds of error claimed

---

[8] In three points of error, appellant asserted, in pertinent part, that

The trial judge abused her discretion when she revoked appellant's probation for failure to complete sex offender treatment program as a condition of his probation for the non-sex offense of injury to a child. . . .

The trial judge abused her discretion when she revoked appellant's probation for failure to attend a sex offender treatment program from February 3, 2010, through the date of the revocation hearing. . . .

The trial judge abused her discretion when [she] found that appellant violated his probation by failing to complete two-thirds of a sex offender treatment program on or before August 18, 2010.

The court of appeals misinterpreted appellant's complaints about the trial court's decision to revoke his community supervision as an attack on the original imposition of the sex-offender-treatment condition, which, by the plain language of his points of error, was not his complaint.

that the trial judge abused her discretion in revoking his community supervision based on: (1) his failure to attend and complete sex-offender treatment; (2) his failure to attend sex-offender treatment from February 3, 2010, through the date of the revocation hearing; and (3) his failure to complete two-thirds of the goals of the sex-offender-treatment program by August 18, 2010.

When a defendant's community supervision has been revoked for violation of the conditions of community supervision and he is sentenced, he may appeal the revocation.[9] Although appellant failed to preserve error regarding the original imposition of the sex-offender conditions, appellant timely appealed the trial court's order revoking his community supervision and preserved error as to the propriety of the revocation.[10]

## Standard of Review

"For probation-revocation cases, we have described the appellate standard of review as whether the trial court abused its discretion."[11] A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement,[12] is arbitrary or unreasonable,[13] or is without

---

[9] Tex. Code Crim. Proc. Art. 42.12 § 23(b).

[10] "An appeal from an order revoking probation is limited to the propriety of the revocation." *Corley v. State*, 782 S.W.2d 859, 860 n.2 (Tex. Crim. App. 1989).

[11] *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013) (*citing Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006)); *see also Bryant v. State*, 391 S.W.3d 86, 93 (Tex. Crim. App. 2012); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984).

[12] *Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010); *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008); *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

[13] *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005); *Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003); *Montgomery*, 810 S.W.2d at 380.

reference to any guiding rules or principles.[14] The mere fact that a trial court decided a matter within its discretionary authority differently than an appellate court would have resolved the matter does not demonstrate such an abuse.[15]

## Grounds for Revocation

The trial court revoked appellant's community supervision based upon two grounds: (1) that he failed to attend a sex-offender-treatment program; and (2) that he failed to meet two-thirds of the completion goals of that sex-offender-treatment program.

Turning to the first ground to revoke, community-supervision officer Pinedo testified at the revocation hearing that she believed appellant had a session with Strain on February 3. After that session she received a letter from Strain indicating that an issue had come up and that clarification by the trial court was needed before appellant could return to Strain's program. Pinedo testified that she offered appellant an opportunity to go to treatment with another provider, but appellant refused the referral. Her understanding was that appellant did not attend any other treatment after February, even though she repeatedly made him aware that he would be held accountable.

Strain testified that, because of the expunction issue, there was a breakdown in appellant's treatment program on February 3. Strain halted further treatment and placed appellant on inactive status until clarification came from the court about what appellant could be required to discuss in the treatment program. Strain testified that he sent a letter to Pinedo regarding the situation. He also testified that, unlike other situations in which a person on community supervision would eventually

---

[14] *State v. Thomas*, 428 S.W.3d 99, 103 (Tex. Crim. App. 2014); *State v. Herndon*, 215 S.W.3d 901, 907-08 (Tex. Crim. App. 2007); *Howell v. State*, 175 S.W.3d 786, 792 (Tex. Crim. App. 2005); *Montgomery*, 810 S.W.2d at 380.

[15] *Thomas*, 428 S.W.3d at 103-04; *Herndon*, 215 S.W.3d at 907-08; *Howell*, 175 S.W.3d at 792; *Manning*, 114 S.W.3d at 926; *Montgomery*, 810 S.W.2d at 382.

return after a breakdown in treatment, appellant never returned.

Appellant testified that he met with Strain on February 3 to discuss the expunged-offense issue. According to appellant, Strain terminated their relationship and told appellant to work out the issue with the court before coming back. Appellant confirmed Pinedo's testimony that he was offered the option to go to a different provider. However, appellant declined because, until the expunction issue was resolved, it would not matter which provider he went to; the treatment program would still break down. Appellant testified that, since February 3, he had not attended treatment because he was waiting for clarification. Only after clarification would he return to treatment.

A treatment provider from Denton County testified as an expert for appellant at the revocation hearing. This provider testified that, on top of finding more goals completed than Strain did, he would have been able to fashion a treatment program to fit appellant's particular circumstance. Rather than a sex-offender-treatment program, he would have placed appellant into a sex-education program.

Pinedo told appellant about other available treatment providers, while also reminding him that he was still required to attend a sex-offender-treatment program. In spite of this, appellant declined to switch providers, believing that the problem involving the expunged offenses would arise again, require the same clarification that Strain was looking for, and lead to future impasses. Appellant chose not to attend a different program, but there was no evidence that other treatment providers would have halted appellant's participation like Strain did. On the contrary, appellant's own expert testified that it would be possible to tailor a program to fit appellant's unusual situation.

Even if the expunction issue would make it impossible for appellant to participate fully in and successfully complete a treatment program, that issue does not prevent him from complying with

the condition that he attend treatment. *Leonard v. State*, 385 S.W.3d 570 (Tex. Crim. App. 2012), offers a useful comparison. Leonard was subject to the same sex-offender-treatment condition as appellant.[16] Although successful completion was entirely within Strain's discretion and outside of Leonard's control, Leonard attended and participated fully in Strain's program.[17] In the case before us, appellant violated the condition of his community supervision that required him to attend a sex-offender-treatment program.[18] Attendance at such a program was within appellant's control. Although Strain's decisions prevented appellant from attending Strain's program after February of 2010, Strain's decision did not prevent appellant from attending another program.

Accordingly, we find that appellant was required, as a condition of community supervision, to attend a sex-offender-treatment program. The trial court did not abuse its discretion in revoking appellant's community supervision for failing to do so. Because proof of the violation of a single condition of community supervision is sufficient to support a trial court's decision to revoke,[19] we need not discuss the other ground upon which the trial court based the revocation.[20] We overrule appellant's second ground for review.

---

[16] *Id*. at 572.

[17] *Id*. at 576-77. Strain discharged Leonard from the program after Leonard was unable to pass polygraph testing. *Id*. at 573. The discharge was the ground for revoking Leonard's probation. *Id*. at 574. Because the trial court's discretion was based upon Strain's discretion, examination of Strain's third-party discretion was necessary. *Id*. at 577. We found that revocation based upon the failure to pass polygraph examinations required basing the court's decision on inadmissible evidence and was therefore an abuse of discretion. *Id*. at 583.

[18] The trial court also found appellant in violation for failing to meet two-thirds of the goals of the treatment program. The determination of whether appellant had met the goals of the program was at Strain's discretion. However, failure to attend is a separate ground sufficient to support appellant's revocation, and we need not further discuss appellant's failure to meet two-thirds of the goals of the treatment program in the time required by the sex-offender condition. *See Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980)*.

[19] *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012); *O'Neal v. State*, 623 S.W.2d 660, 661 (Tex. Crim. App. 1981).

[20] *Moore*, 605 S.W.2d at 926.

**The Expunction Issue**

Appellant's first ground for review asks whether the trial court abused its discretion in revoking community supervision when it ignored appellant's expunction. Because of our disposition of his second ground for review, we need not address the effects of the expunction order. Accordingly, we dismiss appellant's first ground for review.

**Conclusion**

Unlike Leonard, appellant violated a condition of his community supervision that was entirely within his own control.[21] While it is true that Strain had suspended his treatment of appellant, appellant was informed of other treatment programs that he could attend. He chose to decline to enter any alternative programs, saying that the expunction issue would again become an issue. Because he was required to attend a sex-offender-treatment program, because he did not object to that condition when it was imposed, and because he chose not to attend any program after February of 2010, the trial court did not abuse its discretion in revoking appellant's community supervision. We affirm the judgment of the court of appeals.

Delivered: July 1, 2015
Do not publish

---

[21] *Cf. Leonard*, 385 S.W.3d at 576-77.